IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

PATRICK WALKER,                          :
                                         :
              Plaintiff,                 :
                                         :
VS.                                      :
                                         :        7 : 11-CV-71 (HL)
AL JONES, *et al.*,                      :
                                         :
              Defendants.                :
_____:

### ORDER AND RECOMMENDATION

Plaintiff, who is proceeding *pro se*, filed this action pursuant to 42 U.S.C. ▪ 1983 on May 31, 2011, alleging Defendants were deliberately indifferent to Plaintiff■s serious medical needs, and violated his rights under the Americans with Disabilities Act (ADA).  (Docs. 2, 8).  Presently pending in this action are Defendants▪ Motion for Summary Judgment, and Plaintiff▪s Motion for Extension. (Docs. 37, 45).

### Background

Plaintiff, who was housed at Valdosta State Prison (“VSP”) during the dates referenced in his Complaint, maintains that Defendants were deliberately indifferent to Plaintiff▪s serious medical needs.  (Docs. 2, 8).  Plaintiff states that he suffers from “avascular necrosis” in his left hip, and that he suffers from extreme pain when he walks.  Plaintiff explains that he must use the assistance of a cane, and even then he can only travel short distances.  Plaintiff maintains that he was transferred from Augusta State Medical Prison to VSP in August of 2010, and at that time he was taking eight (8) Percocet pain pills four (4) times a day.

Upon arrival at VSP, Plaintiff alleges that Defendant Dr. Moody discontinued Plaintiff▪s pain medication because Defendant Nurse Teresa Nall informed Defendant Moody that Plaintiff “palmed

[his] pain medications [when he] walked away from the pills call window." Plaintiff maintains that he told Defendant Moody that he did not palm the pain medication; however, Defendant Moody would not allow Plaintiff to have his necessary pain medication. As a result of Defendant Moody, Defendant Nall, and Defendant P.A. Nurse Seleska's refusal to give Plaintiff his pain medication, Plaintiff alleges that he was in excruciating pain for three months.

Plaintiff further alleges that he wrote letters to Defendant Medical Administrator Al Jones and spoke with Defendant Jones regarding his pain medication, his disabilities, and his "pain and suffering", but Defendant Jones refused to help Plaintiff obtain any pain medication because of the nature of Plaintiff's conviction.

Plaintiff alleges that Defendant Moody informed Plaintiff that he would see a specialist for his hip, but refused to follow through with setting up the appointment. Plaintiff also contends that Defendant Moody violated Plaintiff's rights under the ADA. Due to his extreme pain, Plaintiff maintains that he refused to leave administrative segregation for more than four months because it was painful for him to try to walk in general population.

Defendants filed their Motion for Summary Judgment on February 27, 2012. (Doc. 37). On February 28, 2012, the Court notified Plaintiff of the filing of Defendants= Motion for Summary Judgment, advised him of his obligations under the law, and directed him to respond thereto within thirty (30) days of the date of the Court's Order. (Doc. 38). Plaintiff responded to Defendants' Motion for Summary Judgment on April 13, 2012. (Doc. 42).

**Standard of Review**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Athe court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law.@ A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).  All facts and reasonable inferences drawn therefrom must be viewed in the light most favorable to the nonmoving party.  *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007).

As the party moving for summary judgment, Defendants have the initial burden to demonstrate that no genuine issue of material fact remains in this case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991).  The movant Aalways bears the initial responsibility of informing the district court of the basis for its motion,@ and identifying those portions of the record, including pleadings, discovery materials, and affidavits, Awhich it believes demonstrate the absence of a genuine issue of material fact.@ *Celotex*, 477 U.S. at 323.  AIf a party fails to properly support an assertion of fact or fails to properly address another party=s assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials B including the facts considered undisputed B show that the movant is entitled to it@  Fed. R. Civ. P. 56(e)(3).

## Discussion

ADeliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain.@ *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (quoting *Gregg v. Georgia*,

428 U.S. 153, 173 (1976)).  In order to show that a prison official acted with deliberate indifference to a serious medical need, Plaintiff must prove that there is an "objectively serious medical need" and the "prison official acted with deliberate indifference to that need." *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004).

To establish the objective element, a prisoner must show that the medical need poses a substantial risk of serious harm if left unattended.  *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).  A serious medical need is one that "has been diagnosed by a physician as mandating treatment or one that is so obvious even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. DeKalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), overruled in part on other grounds, by *Hope v. Pelzer*, 536 U.S. 730 (2002).  A serious medical need can also be established if there is a delay in treatment that worsens the condition.  *Id.* at 1188-1189. "In contrast, delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation." *Id.* at 1188.

To establish that a prison official acted with deliberate indifference to a serious need, Plaintiff must also show that the prison official had "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; and (3) by conduct that is more than mere negligence." *Brown*, 387 F.3d at 1351.  A prison official's subjective knowledge of a risk is a question of fact as to which the defendant "must *both* be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, *and* [ ] must also draw the inference." *Bozeman v. Orum*, 422 F.3d 1265, 1272 (11th Cir. 2007) (emphasis in original) (quoting *Farmer v. Brennan*, 511 U.S. 825 (1994)).

Deliberate indifference must be more than a medical judgment call or an inadvertent failure to provide medical care.  *Murrell v. Bennett*, 615 F.2d 306, 310 n. 4 (5th Cir. 1980).  An inmate who

receives adequate medical care, but disagrees with the mode or amount of treatment has not

established deliberate indifference.  *See Harris v. Thigpen*, 941 F.2d 1495, 1507 (11th Cir. 1991);

*Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985).

*Evidence*

      In asserting that they are entitled to the entry of summary judgment, Defendants have

submitted affidavits from the following VSP employees: Correctional Officer Sam Christian,

Defendant Jones, Administrative Assistant Gail Knowles, Defendant Moody, Defendant Nall,

Defendant Seleska, and Isolation/Segregation Supervisor Anthony Terrell. (Docs. 37-4 – 37-10).

Defendants have also included relevant grievances and letters submitted by Plaintiff while housed at

VSP, portions of Plaintiff's medical records, and portions of Plaintiff's disciplinary reports.  (*Id.*).

      Defendants' evidence shows that while Plaintiff was housed at Augusta State Medical Prison,

non-party Dr. Nichols ordered Percocet, a narcotic pain medication, for Plaintiff.  (Doc. 37-7,

Moody Aff. ¶ 7).  The Percocet was to be "crushed and floated", and Plaintiff was to take two pills,

four times a day as needed.  (*Id.*).  "'Crushed' is when pills are ground into a powder form and

'floated' is when the powder is combined with liquid."  (*Id.* at ¶ 8).  Pills are "crushed and floated"

to prevent diversion of the medication. (*Id.*).

      On August 26, 2010, Plaintiff arrived at VSP and was placed on Darvocet, a narcotic pain

medication, twice a day, until Defendant Moody could review Plaintiff's medical chart.  (*Id.* at ¶ 9).

Defendant Moody ordered Percocet for Plaintiff on August 31, 2010, with instructions to take two

pills four times a day as needed for pain.  (*Id.* at ¶ 10).  The next day Defendant Moody was

informed that "there was no Percocet because no prior approval had been given to order Percocet

'non-formulary'", meaning the medication would be taken over a long period of time.  (*Id.* at ¶¶ 11-

12).  Defendant Moody then wrote an order for Tylenol 3, with instructions to take two tablets every six hours.  (*Id.* at ¶ 13).

Inmates receive and take medications in the presence of a nurse or correctional officer during pill call.  (Doc. 37-8, Nall Aff., ¶ 5).  On October 10, 2010, Defendant Nall was assigned to pill call.  (*Id.* at ¶ 6).  On that day, Defendant Nall saw Plaintiff "separate his Tylenol 3 from the rest of his medications, and palm it in his hand."  (*Id.* at ¶ 7).  Defendant Nall instructed Plaintiff to take all his medications at pill call, to which Plaintiff responded "that he would take his medication the way he wanted to and that it was none of [Defendant Nall's] business what he did with his pills."  (*Id.* at ¶¶ 9-10).  Plaintiff left the pill call area without Defendant Nall witnessing Plaintiff take the Tylenol 3.  (*Id.* at ¶ 15).  Defendant Nall documented the incident in Plaintiff's medical chart, and "wrote a witness statement for the doctor who had ordered the medication."  (*Id.*  at ¶¶ 16-17).

Later that evening, Plaintiff arrived for another pill call, and was told that his medication had been ordered "crushed and floated".  (*Id.* at ¶ 19-20).  Rather than take his medication, Plaintiff "threw the medication on the ground, became verbally abusive, and left the pill call line."  (*Id.* at ¶ 21).  Defendant Nall documented the incident in Plaintiff's medical chart.  (*Id.* at ¶ 22).

On October 14, 2010, Plaintiff requested that his medication not be "crushed and floated" because he was unable to take it as ordered.  (Doc. 37-7, Moody Aff., ¶ 21).  Non-party Nurse Practitioner Fry "noted that [Plaintiff] was demanding Tylenol 3 in pill form only."  (*Id.*).  Defendant Moody discussed Plaintiff's October 10 attempted diversion with NP Fry, and discontinued Tylenol 3 on October 14, 2010.  (*Id.*).  It is Defendant Moody's "policy to cancel prescriptions for narcotic medications of patients found to be diverting them as these medications can be amassed and used in suicide attempts", or used by the inmates to illegally barter.  (*Id.* at ¶ 23).  On October 16, 2010,

Plaintiff angrily confronted Defendant Nall and asked why he was not receiving Tylenol 3 any longer. (Doc. 37-8, Nall Aff., ¶ 23). Defendant Nall informed Plaintiff that his Tylenol 3 was discontinued because Plaintiff was not taking it as prescribed. (*Id.* at ¶ 24). Plaintiff began making profane threats against the doctor, and Defendant Nall documented the incident in Plaintiff's medical chart. (*Id.* at ¶ 25).

Plaintiff requested pain medication on October 21, 2010, and NP Fry told Plaintiff she would write him a prescription for either Mobic or Motrin, both non-narcotic pain medications. (Doc. 37-7, Moody Aff., ¶ 24). Plaintiff became angry that his narcotic medication was stopped, and NP Fry instructed Plaintiff to leave the appointment. (*Id.*). NP Fry noted that Plaintiff had a Naproxen prescription ordered, which is a non-narcotic, and told Plaintiff that he could use regular strength Tylenol located in the dorm for pain. (*Id.* at ¶ 25).

Defendant Seleska attempted to discuss Plaintiff's history of non-compliance in taking his narcotic pain medication on November 30, 2010. (Doc. 37-9, Seleska Aff., ¶ 11). Plaintiff became angry and argumentative, and was escorted from the room. (*Id.*). On February 28, 2011, Plaintiff requested Neurontin from Defendant Seleska, and became angry when he was told that his non-compliance with taking medications as prescribed was why Neurontin had been discontinued. (*Id.* at ¶ 14). Defendant Seleska testified that she attempted to speak with Plaintiff on several occasions about his non-compliance, but Plaintiff would become angry and abusive whenever Defendant Seleska tried to discuss the issue. (*Id.* at ¶ 19).

NP Fry prescribed Mobic for Plaintiff's pain in February of 2011. (Doc. 37-7, Moody Aff., ¶ 29). On March 21, 2011, Defendant Moody gave Plaintiff a prescription for Feldene, a non-narcotic anti-inflammatory for pain. (*Id.* at ¶ 30). When Defendant Moody offered to increase the dosage

when Plaintiff said it was not working, Plaintiff declined because of the co-pay.  (*Id.* at ¶ 31).

Defendant Moody prescribed Tylenol 3 again in May of 2011; however, when Plaintiff was given the

medication he took the pill cup and poured the medication into a cup he had sitting in his cell.  (*Id.* at

¶ 38).  "This indicated to [Defendant Moody] that [Plaintiff] was hoarding the medication, and

[Defendant Moody] discontinued the Tylenol 3."  (*Id.* at ¶ 39).

    In regard to Plaintiff's hip pain, Plaintiff was given a medical profile for "no walking or

standing for a period of greater than 45 minutes" on September 9, 2010.  (Doc. 37-7, Moody Aff., ¶

14).  Plaintiff was seen at the orthopedic clinic at Augusta State Medical Prison on September 16,

2010.  (*Id.* at ¶ 15).  Plaintiff was referred to the Atlanta Medical Center for a hip revision, which "is

a new surgery to re-do a previous surgery."  (*Id.* at ¶¶ 15-16).  On October 4, 2010, Defendant

Moody "requested a consult for [Plaintiff] with an orthopedist for an evaluation and consideration of

a hip revision."  (*Id.* at ¶ 18).   Plaintiff saw an orthopedist on February 22, 2011. (*Id.* at ¶ 30).

Defendant Moody ordered the records from Plaintiff's original surgery and the x-rays from Augusta

State Medical Prison on March 21, 2011.  (*Id.*).  On April 26, 2011, "the consulting orthopedist

requested a hip aspiration and lab work prior to revision surgery."  (*Id.* at ¶ 34).

    Plaintiff's hip aspiration was performed at Augusta State Medical Prison on June 29, 2011.

(*Id.* at 40).  "The results showed no infection."  (*Id.*).  On July 12, 2011, Plaintiff was seen for a

follow-up, and the "consultant ordered the necessary lab work to be completed prior to surgery, with

post surgical follow-up at the outpatient clinic."  (*Id.*).

    Defendants' evidence also shows that Defendant Jones met with Plaintiff on September 8,

2010, after Plaintiff was transferred to VSP.  (Doc. 37-5, Jones Aff., ¶ 7).  Defendant Jones

discussed Plaintiff's medical profiles, "including one for medical assisted living, which VSP does not

have." (*Id.*).  Plaintiff was informed that he should discuss his medical profiles with Defendant Moody during his next appointment.  (*Id.*).  On September 27, 2010, Defendant Jones met with Plaintiff again during one of Plaintiff's appointments with Defendant Seleska.  (*Id.* at ¶ 8).  Defendant Jones noted that he would work with the Deputy Warden of Care and Treatment to try to have Plaintiff transferred to another institution.  (*Id.*).  However, "[p]rison transfers are made at the Central Office level and not at the individual facilities."  (*Id.* at ¶ 9).

Defendant Jones testified that he has neither "the medical authority to prescribe treatment for inmates, nor . . . the authority to overrule treatment determinations made by [Defendant] Moody." (*Id.* at ¶ 13).  Additionally, Defendant Jones "was not aware of the nature of [Plaintiff's] conviction", and does "not treat any inmate differently because of the nature of their conviction." (*Id.* at ¶ 22).

Plaintiff has provided no evidence in opposition to the Motion for Summary Judgment, only argument.  (*See* Docs. 42, 46).  The Court notes that Plaintiff's Responses and his Complaint were not sworn statements made under penalty of perjury, nor were the documents notarized.  Further, the record does not contain Plaintiff's deposition.  As such, Plaintiff has not provided any evidence to refute Defendants' summary judgment showing.

*Deliberate Indifference*

The evidence shows that Plaintiff received adequate medical treatment for his complaints of hip pain.  Plaintiff appears to dispute the method of treatment he received, in that he disagreed with receiving his narcotic pain medication "crushed and floated".   Initially, it appears Plaintiff was prescribed narcotic pain medication in pill form.  (*See* Doc. 37-8, Nall Aff., ¶ 7).  After Defendant Moody was provided with evidence that Plaintiff was attempting to, or did in fact, divert his pain medication, Plaintiff's narcotic pain medication was ordered to be "crushed and floated".  (*Id.* at ¶¶

18-20; Doc. 37-7, Moody Aff., ¶ 20).  Plaintiff would not take Tylenol 3 "crushed and floated".

(Doc. 37-7, Moody Aff., ¶  21; Doc. 37-8, Nall Aff., ¶¶  20-21).   After Plaintiff's narcotic medication

was discontinued because of his refusal to take the medication as ordered, Plaintiff was offered and

prescribed non-narcotic pain medications. (Doc. 37-8, Nall Aff., ¶¶ 23-24; Doc. 37-7, Moody Aff.,

¶¶ 21, 24-25, 29-30).   Defendants also advised Plaintiff that he could take Tylenol, which was

available in the dorms.    (Doc. 37-7, Moody Aff., ¶ 25).

     The undisputed evidence shows that Defendants provided Plaintiff with several different forms

of pain medication, and only ceased distribution of the narcotic pain medication due to Plaintiff's

diversion attempts and refusal to take the medication as prescribed.  Plaintiff simply disagreed with

the method of treatment he received, and therefore, his claim that Defendants were deliberately

indifferent to Plaintiff's pain management cannot survive Defendants' Motion for Summary

Judgment.  *See Hall v. Secretary*, 2010 WL 2681728, *8 (M.D. Fla July 7, 2010) ("Whether

Plaintiff's medications should have been administered crushed or in whole form is 'a simple

difference in medical opinion between the prison's medical staff and the inmate' regarding the course

of treatment and does not state an Eighth Amendment claim." (quoting *Harris*, 941 F.2d at 1505));

*Morris v. Gay*, 2007 WL 2917571, *8 (S.D. Ga Oct. 5, 2007) (finding that the "mere fact that [the

plaintiff] disagreed with the type of pain medication he was receiving [was] not sufficient to support

his § 1983 claim").

     The evidence also shows that Defendant Moody was not deliberately indifferent to Plaintiff's

medical needs regarding Plaintiff's hip treatment.  While housed at VSP, Plaintiff was given a

medical profile that limited prolonged standing and walking. (Doc. 37-7, Moody Aff., ¶ 14).  He was

taken to Augusta State Medical Prison on at least two occasions, at one of which a hip aspiration

was performed.  (*Id.* at ¶¶ 15, 40).  It appears Plaintiff was seen by an orthopedic specialist on at least two occasions, and revision surgery was scheduled.  (*Id.* at ¶¶ 30, 34).  There is no evidence that Defendant Moody failed to follow through with setting up appointments for Plaintiff's hip revision, and thus, Plaintiff's claim cannot withstand Defendants' summary judgment showing.

Additionally, Plaintiff has failed to refute the evidence that Defendant Jones had no authority to order pain medications for Plaintiff, and had no authority to order Defendant Moody to prescribe Plaintiff specific medications.  Furthermore, Defendant Jones was not aware of the nature of Plaintiff's conviction, and as such, there is no evidence that Defendant Jones was deliberately indifferent to Plaintiff's need because of Plaintiff's conviction.  (Doc. 37-5, Jones Aff., ¶ 22).  Accordingly, it is undisputed that Defendant Jones was not deliberately indifferent to Plaintiff's medical needs, nor did he deny Plaintiff pain medication because of his conviction.

As Plaintiff did not provide the Court with evidence that refuted Defendants' showing that they were not deliberately indifferent to a serious medical need, no genuine issue of fact remains regarding Plaintiff's claims.  Thus, Plaintiff's claims of deliberate indifference to a serious medical need cannot survive Defendants' Motion for Summary Judgment.

<u>Americans with Disabilities Act Claim</u>

Plaintiff has also attempted to hold Defendant Moody liable under the ADA.  (Doc. 2).  Title II of the ADA prohibits discrimination in services, programs, or activities of a "public entity".  *See* 42 U.S.C. § 12132; *Edison v. Douberly*, 604 F.3d 1307, 1308 (11th Cir. 2010).  To state a claim under the ADA, Plaintiff must show "(1) that he is a 'qualified individual with a disability;' (2) that he was 'excluded from participation in or . . . denied benefits of the services, programs, or activities of a public entity' or otherwise 'discriminated against by such entity;' (3) by reason of such disability."

*Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001) (quoting 42 U.S.C. § 12132).

Initially, the Court notes that there is no individual liability under the ADA, and therefore, any ADA claim alleged against Defendant Moody in his individual capacity should be dismissed.  *See* 42 U.S.C. § 12132; *Mason v. Stallings*, 82 F.3d 1007, 1009 (11th Cir. 1996); *Rickerson v. Gills*, 2012 WL 1004733, *2 (N.D. Fla. Feb. 8, 2012).

At most, Plaintiff provides a conclusory statement in his Complaint that Defendant Moody violated Plaintiff's rights under the ADA.  (Doc. 2).  Plaintiff did not provide any additional argument in his Responses to Defendants' Motion for Summary Judgment.  (Docs. 42, 46).   First, Plaintiff has not shown that he is a qualified individual with a disability.  Plaintiff also does not allege, nor is there evidence to show, that he was excluded from participating in programs, services, or activities, or that he was discriminated against because of his alleged disability.   Plaintiff does not allege that he was unable to use the facilities at VSP because of his alleged disability, but rather states that he chose not to because it might hurt his hip to be in general population.  (Doc. 46).  Plaintiff has not successfully stated an ADA claim against Defendant Moody, and therefore, Plaintiff's ADA claim cannot withstand Defendants' Motion for Summary Judgment.

## Conclusion

As Plaintiff has failed to sufficiently rebut Defendants' summary judgment showing, it is the recommendation of the undersigned that Defendants' Motion for Summary Judgment be **GRANTED**.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to the recommendations contained herein with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

***Motion for Extension (Doc. 45)***

On June 7, 2012, Plaintiff filed a Motion for Extension requesting the Court accept his "Answer to Reply of Defendants['] Motion for Summary Judgment" which was filed on the same day.  The Court notes that Plaintiff's "Answer to Reply" is a sur-reply, and is not favored by the Court. *See* Local Rule 7.3.1(b).  However, as Plaintiff is a *pro se* litigant, the Court examined this second Response to Defendants' Motion for Summary Judgment during its analysis of the Motion for Summary Judgment.  Therefore, Plaintiff's Motion for Extension is **GRANTED**.

**SO ORDERED AND RECOMMENDED**, this 28th day of June, 2012.

s/ ***THOMAS Q. LANGSTAFF***
**UNITED STATES MAGISTRATE JUDGE**

llf

13